## MYERS ARMS CORPORATION v. UNITED STATES.

### No. M–231.

Court of Claims.

April 7, 1941.

Charles R. Fenwick, of Washington, D. C. (William H. Mondell, of Waynesboro, Va., and Hugh H. Obear, of Washington, D. C., on the brief), for plaintiff.

H. L. Godfrey, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen. (J. F. Mothershead, of Washington, D. C., and Frank H. Harmon, of New York City, on the brief), for defendant.

Before WHALEY, Chief Justice, and GREEN, LITTLETON and WHITAKER, Judges.

GREEN, Judge.

This suit is brought for the alleged infringement of patent No. 1,608,109, issued November 23, 1926, the patent stating that the "invention relates to vehicles, and particularly to that class thereof that are used in warfare." The original application, of which the patent in suit is said to be a division was filed August 23, 1909. Between this date and the time the patent was is-sued, the alleged invention was withheld from the public.

The original application for a patent was "for improvements in flying machines." One of the objects stated was "to improve the means for supporting and operating a cannon."

The findings show in detail the disclosures made in the original application with reference to the method of mounting a gun or cannon on an aeroplane. The most important feature, as we view it, is that the gun mount is a rotatable carriage provided with wheels running on a track, and with horizontal trunnions, by means of which the gunner is enabled to aim the cannon in all directions within a hemisphere above the frame or body of the machine. Claims 29 to 34 of the original application refer to a combination of a flying machine and a cannon. Claims 29 and 34, which are typical of this group, are as follows:

"29. A flying machine comprising a body having a gunner's compartment provided with an opening to the exterior of the body, a carriage rotatable within said compartment and projecting through said opening, and a cannon mounted on the carriage outside of said body.

"34. A flying machine comprising a body having a gunner's compartment provided with an opening to the exterior of the body, a carriage rotatable within said compartment and projecting through said opening, a cannon mounted on the carriage outside of said body, and a gunner's seat arranged on said carriage."

On December 7, 1909, the Examiner in the Patent Office rejected claims 29 to 34 on the ground that there was no patentable relation between a flying machine and a cannon carried thereby. Thereafter claims 29 to 34 were cancelled by the patentee.

December 1, 1916, the patentee, Myers, filed a divisional application stating as follows:

"This invention relates to vehicles, and particularly to that class thereof that are used in warfare.

"It consists of a gun or cannon that can be turned in any direction on a' vehicle.

"It further consists in improved means for supporting and operating the gun or cannon."

Claim 1 as filed read as follows: "A vehicle comprising an elongated box-shaped

body with tapering ends, means for driving and steering the vehicle, a turntable in the said body, a carriage mounted on the said table, and a cannon mounted on the said table."

The claim of infringement was based on two types of Government gun mounts. One of these types is known as the Navy 3–A and 3–B mounts. The findings of the commissioner are directly adverse to the plaintiff so far as the Navy 3–A and 3–B mounts are concerned and in this respect we do not understand the findings are seriously controverted by the plaintiff; consequently the Navy mount will not be considered.

The other alleged infringing mount is referred to in the findings as the Scarff gun mount and in the defendant's argument as the Barbette mount. It is exemplified by a Scarff mount upon a DeHavilland–4 aeroplane. A photograph of a Scarff mount on a DeHavilland–4 aeroplane accompanies Finding 15 which, together with Findings 16 and 17, describes in detail the Scarff mount, making reference to numbers on the photograph showing definitely the location of the parts described in the findings and making plain how they are used.

The photograph shows that the Scarff mount has a base ring or circular track rigidly secured on the top surface of the fuselage or body of the aeroplane and spaced outwardly from the edge of a cockpit about two inches. An annular movable ring is concentrically mounted to rotate horizontally on this stationary ring, both of the rings being of greater diameter than the cockpit. There is nothing similar in the Scarff mount to the mechanism in the Myers mount except the two rings which, however, are located very differently. In the Myers mount the rings are located at the base of the cockpit around an opening therein but in the Scarff mount the rings are placed above and outside the cockpit.

Claim 3 does not locate the runway other than by the statement that it is disposed about the cockpit, but the drawings which accompanied the patent and are reproduced in connection with Finding 8, show that the rotating ring is located in the bottom of the cockpit, which is sufficiently large to receive not only the gunner but the gun mounting. The structure disclosed is such that the rings must necessarily be within the cockpit. An opening is provided in the bottom of the cockpit and in the rotating platform, so that if desired the gun muzzle

may be depressed and a downward cone of fire may be obtained.

Claims 3 and 10 when not limited to the specific illustrated embodiment of the patent in suit, in which the circular track is located in the bottom of the cockpit and adjacent to an opening therein, would apply to the Scarff mount, but if read broadly enough to cover the Scarff mount, that is— to apply to rings used for the purpose of rotation wherever located—then these claims are invalid because anticipated by the Voller, McClean, and Gruson patents, as hereinafter shown and found by our commissioner.

The findings of our commissioner, if sustained, are sufficient to defeat the plaintiff's claims in all respects. The plaintiff, however, excepts to these findings and asks that a number of changes and additions be made thereto. There are some additions that are asked by plaintiff that are supported by the evidence, but we think they are not material to the issues in the case. Where changes are asked in the findings we agree with the commissioner and think his findings are fully supported by the evidence.

Finding 25 shows that the Voller patent, although issued October 15, 1912, was made on an application filed May 3, 1909, prior to the filing date of the original Myers application. It is directed to the concept of a gun mounted in an aeroplane. Like the gun in the patent in suit, the gun in that patent had a set of trunnions for adjustment in a vertical plane. Provision for horizontal rotation of the trunnion bracket was provided by means of a movable circular ring rotating on ball bearings on the rim of a second fixed circular race or track placed at the top of a conical portion of a fixed base. The gun may therefore be trained horizontally to any desired position and may also be adjusted through a large elevational angle on its trunnions. Although the Voller patent does not disclose the precise location of the gun, it is obvious that in order that it might be operative it must be placed in a cockpit and the gun must be supported by its trunnions somewhat above the top of the cockpit, which is apparently what is intended by the phraseology of claim 4 of the patent in suit, viz. "adapted to carry a gun support slightly above the level of the upper surface of the main body."

We think that the application of this patent shows that the concept of a gun mount-

ed in an aeroplane in the same general manner as the gun in the patent in suit was not new when the application for the Myers patent was made, but it is not necessary to rest the decision in this case upon such a conclusion. At least the Voller patent shows that there was nothing new in the concept of mounting a gun in an aeroplane in such a manner that the line of fire could be adjusted either horizontally or vertically.

The United States patent to Gruson, described in Finding 28, was issued October 2, 1887, and discloses a vehicle having an armored gun with a stationary circular supporting track or platform rigidly positioned at the top of the gunner's compartment just below the top edge. The movable circular portion of the gun carriage rotates on rollers carried by this circular track, and this movable ring portion carries trunnion mountings in which is fixed a gun capable of elevational movement in a vertical plane (see figure 1 of the Gruson patent set out in Finding 28). As said in Finding 33, it would not require more than mechanical ingenuity to apply the gun mounting of the Gruson patent to the gunner's compartment or cockpit of the aeroplane instead of the compartment of the vehicle with which it is shown. It is true that the Gruson patent did not contemplate the placing of the gun carriage in an aeroplane, but as said by the examiner in the Patent Office (Finding 4) there is no patentable relation between a flying machine and a cannon carried thereby.

An important issue in the case is whether claims 3 and 10 are anticipated by the patent to Gruson. It is said that the rotating circular ring 82, which is present both in the Scarff and Myers mounts, is wanting in the Gruson design, and that instead there is a solid armor plate top B, and suspended from this top the gun and gunner's seat. This presents a misleading picture. The gun mount in the Gruson patent is carried by the lower edge or periphery of the shield or top B, which is semispherical; and this edge forms the mechanical equivalent of the circular ring 82 in the Myers mount and rotates in an identical manner, moving upon rollers. In fact the ring is there, but the shield was imposed upon it. It would be perfectly evident to any one skilled or unskilled that if the shield was put above the gunner it would act as a protection. It was equally evident, we think,

that the protective shield was not essential for the support and rotation of the gun.

It is specially insisted that the Gruson patent was never intended to be used in an aeroplane and that it is not adapted to such use. We think it is immaterial whether it was intended to be used in an aeroplane, if the aeroplane was later improved and made suitable for its use. At the time the Gruson patent was issued (1887) aeroplanes were in a preliminary stage so far as warfare was concerned. If anyone had a conception of using a plane for combat purposes it had not been made public at that time, but with the advancement in the art of constructing aeroplanes they became capable of carrying guns, and as has already been shown, the Voller patent described a method of mounting a gun in them in such a manner that the direction for firing would be adjustable. The important feature of the Gruson design was in the adaptability of the gun mount. No change was necessary in this respect to make it suitable for use in the newer designs of aeroplanes. The change was in the capacity of the aeroplane itself, so that it became capable of carrying a gun with an adjustable mount; and improvements in carrying capacity were every day being made until at the time of the World War, before the Myers patent was issued, fighting planes carrying a gun were a part of the regular equipment of the armies engaged. The fact that the Gruson structure was not intended to be used in an aeroplane, does not alter our conclusion that the feature of a gun mounted in a compartment and adjustable as to its direction of fire was disclosed by the Gruson patent. Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658, cited by plaintiff, we think has no application to the facts in the case at bar.

It is also urged on behalf of plaintiff that if changes were made in this solid cover B the whole plan of the Gruson patent would have to be reorganized. On the contrary we think it would be evident to anyone skilled or unskilled that if the protective cover was entirely omitted except the ring portion at the lower edge thereof, the gun could be operated with perfect freedom without any other changes. The movable ring portion which supports the gun carriage would still remain. It is true the Gruson patent was on a combination which included a protective cover, but we

are now discussing whether the essential elements of the Myers patent were disclosed by that of Gruson, and we are of the opinion that they were. That the ring in the Gruson patent was on the lower part of the protective shield and united with it, we think is immaterial to the issues here involved. As stated above it was supported by rollers and rotated in a similar manner to the ring of the Myers patent. If the protective top so obstructed the view of the gunner as to make it of no advantage it could be discarded entirely and still retain the features which made the direction of fire adjustable. If it was thought that the slot in the top did not provide sufficient scope for upward fire this could be enlarged. Both of these features are merely matters of mechanical design capable of modification by any one skilled in the art.

What is said above is sufficient to dispose of the case, but there are some other matters which, if necessary, may be considered as supporting the defense.

We have already shown that there was nothing new in mounting a gun in an aeroplane at the time when plaintiff applied for his patent, and that there was nothing new in providing for an adjustable mount. In further support of this conclusion with reference to an adjustable mount we would call attention to the patent issued to McClean, January 12, 1904. This disclosed a pedestal type gun mount comprising a carriage having at its base a relatively large annular ring mounted on rollers for turning in a horizontal plane about its central vertical axis, the rollers operating on a circular fixed track for this purpose. The upper end of the carriage was provided with trunnions which supported a machine gun capable of adjustment both horizontally and vertically through the means above stated. The application seems to assume that there was nothing new in mounting a gun so its direction would be adjustable both horizontally and vertically and presented a complicated system of loading and firing upon which the inventor rests his claims to a patent. The vertical adjustment is regulated and controlled by complicated contrivances not necessary to set out here. It is sufficient to say that the gun swings vertically on its trunnions under an elaborate system for controlling and fixing its movements. It will be observed that the annular ring upon which the carriage rotates horizontally is located at the base of the carriage as it was in the plaintiff's patent.

The McClean patent in our opinion furnishes another instance of anticipation of the concept of providing a means for horizontal rotation through the use of a movable ring supported by rollers carried on a stationary ring below.

Our conclusion is that if the patent in suit is read so as to apply to the Scarff mount it was anticipated by prior patents and designs and is therefore invalid. If not so read and confined to the specific embodiments disclosed in the Myers patent there was no infringement, as the Scarff mount was an altogether different structure from that disclosed by the patent in suit.

It follows that the petition must be dismissed, and it is so ordered.

WHALEY, Chief Justice, and LITTLETON, Judge, concur.

WHITAKER, Judge, took no part in the decision of this case.